IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EMILY DIXON, Psy.D. and RICARDO CARRERA, § § § | |
| Plaintiffs, § § | |
| v. § | CIVIL ACTION NO. _____ |
| § § | |
| MERRICK GARLAND, HERIBERTO TELLEZ, MICHAEL SMITH, and GERARDO ROSALEZ, § § § § § | |
| Defendants § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### Introduction

1. Plaintiff Emily Dixon, Psy.D and Ricardo Carrera are employed by the Federal Bureau of Prisons ("BOP"). Dr. Dixon is a Clinical Psychologist and Licensed Sex Offender Treatment Provider, serving as Dual Diagnosis Drug Abuse Program Coordinator at Federal Medical Center - Carswell ("FMC Carswell") in Fort Worth, Texas. Mr. Carrera is a Drug Treatment Specialist serving at Federal Correctional Institution - Bastrop ("FCI Bastrop") in Bastrop, Texas.

2. Dr. Dixon and Mr. Carrera have both taken the step of complaining of discrimination, harassment and retaliation in the pervasively hostile work environments where they are employed at FMC Carswell and FCI Bastrop, respectively.

3. Following their respective complaints, the discrimination, harassment, hostile work environments and retaliation have not been corrected by BOP. Instead, Dr. Dixon's and Mr. Carrera's respective supervisors have continued to retaliate against them for their complaints.

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 1**

DIXONORIGINALCOMPLAINT.wpd

## Parties

4. Plaintiff, EMILY DIXON, Psy.D., is an individual who resides in Tarrant County, Texas.

5. Plaintiff, RICARDO CARRERA, is an individual who resides in Bastrop County, Texas.

6. Defendant, MERRICK GARLAND, is Attorney General of the United States and head of the U.S. Department of Justice, the executive branch department in which the Federal Bureau of Prisons runs the federal prison system. Service may be completed on Defendant Garland at the U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530 and on the U.S. Attorney for the Northern District of Texas, 1100 Commerce Street, Third Floor, Dallas, Texas 75242.

7. Defendant, HERIBERTO TELLEZ, is employed by the Federal Bureau of Prisons as the Regional Director for the BOP South Central Region in Grand Prairie, Texas. Service may be completed on Heriberto Tellez at 344 Armed Forces Drive, Suite 300, Grand Prairie, Texas 75051.

8. Defendant, MICHAEL SMITH, is employed by the Federal Bureau of Prisons as the current warden at FMC Carswell. Service may be completed on Michael Smith at FMC Carswell, 3000 I Street, Fort Worth, Texas 76127.

9. Defendant, GERARDO ROSALEZ, is employed by the Federal Bureau of Prisons as the current warden at FCI Bastrop. Service may be completed on Gerardo Rosalez at FCI Bastrop, 1341 State Hwy 95, Bastrop, Texas 78602.

## Venue and Jurisdiction

10. Venue is proper in the Northern District of Texas in the Dallas Division, because some or all of the cause of action accrued in the Northern District of Texas, Dallas Division at the BOP South Central Regional Office in Grand Prairie, Texas.

11. The Court has jurisdiction under 28 U.S.C. § 1331 as Dr. Dixon's and Mr. Carrera's claims

involve questions of federal law, including 28 U.S.C. § 2201 and 42 U.S.C. § 2000e *et seq*.

## Factual Allegations

### *Plaintiff Dixon's Allegations*

12. Plaintiff Dixon alleges illegal employment discrimination and violations of her constitutional rights by the BOP, by Heriberto Tellez and by Michael Smith, due to the pervasive discrimination and the hostile work environment she faces each day as a psychologist working at FMC Carswell in Fort Worth, Texas and due to retaliation she has suffered as a result of her complaints of discrimination, including her unsuccessful efforts using the BOP's agency complaint process.

13. For years, after she testified for another employee, Nicholas Bishop, who was a psychology intern at FMC Carswell with his own complaints of discrimination and harassment, Dr. Dixon was subjected to discrimination, harassment and retaliation by supervisors at FMC Carswell.

14. In 2019, she was subjected to discrimination and harassment at work, including by her supervisor, Daniel Kim, who was then the Chief Psychologist at FMC Carswell, and Dr. Dixon filed a complaint of discrimination through the BOP's internal EEO process.

15. That internal EEO complaint, number BOP-2019-01466, remains pending and awaits a decision from the Department of Justice - Complaint Adjudication Office ("CAO").

16. Dr. Dixon has requested the issuance of a notice of right to sue, because the BOP's internal EEO process and the Department of Justice CAO process are non-functioning procedures.

17. More than six months before filing this lawsuit, through her attorney, Dr. Dixon requested that the CAO advise when she would receive the final agency decision on my EEO complaint.

18. In response to that request for information, Meghan Fiebelkorn, who is apparently the Program Support Assistant at the Complaint Adjudication Office, provided the following response

by email:

> **Unfortunately, neither I nor anyone else at the CAO can be more specific as to when we will issue FADs for the cases you cited. We are working through BOP cases we received in 2020, but as different cases require different amounts of time to review and adjudicate, we cannot know with any specificity when we will issue an FAD in a given case.**

19. Since making EEO complaint number BOP-2019-01466, Dr. Dixon has attempted to resolve the discrimination, harassment and retaliation she suffered, including by filing a complaint with the Merit System Protection Board late in 2020, MSPB Case Number DA-1221-21-0040-W-1, which was settled, but no resolution of my discrimination, harassment and retaliation complaints resulted.

20. Although Dr. Dixon's former supervisor, Daniel Kim, moved from FMC Carswell, she has continued to suffer discrimination, harassment and retaliation by one of Daniel Kim's proteges, Nallely Galvan, which Defendant Tellez and Defendant Smith have refused to remedy.

21. Through her continuing efforts, continuing to complain of discrimination, harassment and retaliation by Nallely Galvan, and through her complaints of the failure of supervisors, currently Defendant Tellez and Defendant Smith, who are aware of Dr. Dixon's complaints, but who have failed to take effective action to remedy the hostile work environment.

22. Letters and emails to Defendant Tellez and emails to Defendant Smith pleading for action, and even a new EEO complaint that is currently pending as BOP-2022-00666, have not prompted any prompt remedial action by BOP.

23. Due to Dr. Dixon's past experience, including her earlier EEO complaint made in 2019, which is still unresolved three years later, it seems quite likely that no prompt remedial action will be taken in response to Dr. Dixon's most recent complaint.

24. Nallely Galvan continues to subject Dr. Dixon to discrimination, harassment and retaliation,

including repetitive complaints against Dr. Dixon at BOP, a malicious, frivolous complaint against Dr. Dixon's license as a Psychologist, which she is now defending against at considerable expense.

25. Galvan has also made malicious, frivolous complaints against Dr. Dixon's subordinates at FMC Carswell, which have also not been remedied by BOP.

26. Nallely Galvan has repeatedly caused Dr. Dixon to be subjected to "Cease and Desist" orders arising from the BOP "Threat Assessment" process, but when Galvan herself violates the "Cease and Desist" orders, no action is taken by supervisors, even as those supervisors have admitted to Dr. Dixon that they know Nallely Galvan is the cause of the problems and the hostile work environment.

27. Dr. Dixon has repeatedly been threatened with retaliatory transfers from FMC Carswell by both the current Warden, Defendant Smith, and by the prior Warden, Michael Carr, who have indicated to Dr. Dixon that she should stop complaining about discrimination.

28. Dr. Dixon also notes the experience of one co-worker, Chaplain Casey Campbell, whose validated complaints of discrimination have not been remedied by BOP for more than five years.

29. As Dr. Dixon's experience and the experience of her FMC Carswell co-workers in the BOP EEO process is that the process is a non-functioning administrative remedy that denies "prompt remedial action" and "interim relief", and as there is no likelihood of prompt resolution in my case, Dr. Dixon seeks immediate relief in federal court.

*Plaintiff Carrera's Allegations*

30. On April 30, 2021, Adriana Lara Spence, a co-worker, and fellow Drug Treatment Specialist (DTS), assaulted Plaintiff Carrera at El Nuevo Restaurant in Bastrop.

31. Mr. Carrera notified Defendant Rosalez about the April 30, 2021 incident, including by providing a copy of an Affidavit of Non-Prosecution and other documents describing the incident.

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 5**

DIXONORIGINALCOMPLAINT.wpd

32.     Carrera called the police on April 30, 2021 because Lara Spence was harassing him.

33.     After the police arrived at the restaurant, Mr. Carrera decided to not file any charges against Lara Spence out of fear that he would suffer negative repercussions at work.

34.     The Psychology Services department at FCI Bastrop has nearly all female employees (6 of 8 employees are female), and Carrera understood the criminal case filed against Lara Spence was filed as a family violence case.

35.     On May 1, 2021, Mr. Carrera reported the incident to his immediate supervisor, Dr. Olga Wartenberg, who is female.

36.     On May 3, 2021, Carrera submitted a memo to Defendant Rosalez explaining the incident, and that day or a day later, he receive a cease-and-desist letter from his supervisor, Dr. Wartenberg.

37.     Mr. Carrera contends the cease-and-desist letter is retaliation against him for his complaint to law enforcement and for his notification to supervisors of the harassment by Lara Spence.

38.     Carrera alleges that BOP has cautioned CEOs, including Defendant Rosalez, against issuing cease and desist letters, because the EEOC has determined such letters can be retaliatory when issued to employees who complain about workplace harassment, as happened to Carrera.

39.     Mr. Carrera believes Lara Spence received some discipline and was placed off work as a result of the April 30, 2021 incident.

40.     On May 5, 2021, Lara Spence returned to work, working in proximity to Carrera.

41.     On July 9, 2021, Mr. Carrera sent an email to Lara Spence about an inmate on Carrera's case load, as Lara Spence interacted with the inmate and should have documented the interaction, but she failed to relay any information to Carrera for clinical and noting purposes.

42.     On July 9, 2021, Carrera submitted an incident report on an Inmate for using the phone on

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 6**

DIXONORIGINALCOMPLAINT.wpd

the RDAP unit, which is a violation of institution rules and DAP policy.

43. Mr. Carrera also reported to Dr. Wartenberg that general population ("GP") inmates from Unit Travis A were regularly crossing over to the drug abuse treatment program ("DAP") Unit on Travis B because the middle door is remaining open.

44. It is a policy requirement that DAP participants shall remain strictly separated from GP inmates, so Carrera reported this recurring violation of policy.

45. On July 14, 2021, Ms. Lara Spence contacted Mr. Carrera and spoke to him in a very aggressive manner seeking chapel keys.

46. That same day Carrera submitted a memo to report this incident to Defendant Rosalez and he also told Dr. Dianne K. Kuehner (female) about the July 14, 2021 incident.

47. Dr. Kuehner asked Carrera if he had written a memo on the incident, and when he said yes, she replied: "ok, that's what I was going to tell you to do."

48. Mr. Carrera alleges that Dr. Kuehner told Lara Spence that Carrera had submitted a memo complaining about her and that Lara Spence should generate a memo complaining about me.

49. On July 14, 2021, Mr. Carrera complained to Dr. Kuehner that the department was discriminating against him due to his age, disability, or gender.

50. Carrera also complained to Dr. Kuehner that it was unfair and discriminatory that his section was holding meetings after my departure from work to discuss departmental matters.

51. Mr. Carrera understands Lara Spence addressed the issues that existed between her and Carrera with Dr. Wartenberg without Carrera allowed an opportunity to explain his position on the issues, he complained to Dr. Kuehner that the discussion with Lara Spence was discriminatory and deprived him of due process rights as the discussion occurred after he was excused from the meeting.

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 7**

DIXONORIGINALCOMPLAINT.wpd

52. Carrera also complained that Dr. Kuehner telling Lara Spence about his memo was improper, but she responded "Don't read into that!", but after this exchange, Carrera told Dr. Kuehner that he would file an EEO complaint due to the continuing discrimination.

53. On July 15, 2021, Mr. Carrera was called to a meeting in the HR office, which was attended by Dr. Tanisha Hall (female), Ms. Jeanine Lee from HR (female), Dr. Dianne Kuehner (female) and the Union President, Curtis Bowen, and Carrera was asked by Hall to explain what happened.

54. When Mr. Carrera did so, Hall responded stating this is a "waste of time" and that it appeared Carrera was "targeting Ms. Lara Spence."

55. Hall said Carrera should have turned over the keys to Lara Spence as she requested that day, although turning over those keys as Lara Spence requested would have violated BOP policy.

56. Hall also said Ms. Lara would run her own phase group and DTS Magda Charris's phase group at the same time, which is another violation of BOP policy, as a DTS can only run one phase group at a time with a limited number of participants.

57. Lara Spence ran both phase groups at the same time, in violation of BOP policy.

58. Also on July 15, 2021, Dr. Hall instructed Carrera that all of his communications with Lara Spence will be through Dr. Wartenberg.

59. On July 19, 2021, Mr. Carrera received another cease-and-desist letter instructing that he stop all communication with Lara Spence.

60. July 29, 2021, Carrera filed an EEO complaint, and he spoke to EEO Counselor Latisha Mason Smith during official time along with the Union VP Mr. Augusta.

61. On August 6, 2021, Lara Spence began sending Carrera messages through inmates in violation of the cease-and-desist letter.

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 8**

DIXONORIGINALCOMPLAINT.wpd

62. Mr. Carrera did not report this additional violation of policy by Lara Spence out of fear that he would be punished or otherwise suffer retaliation due to my report.

63. On or about August 7, 2021, Carrera again made a verbal report of continuing violations of DAP program policies to Dr. Wartenberg about GP inmates being allowed by administration to come onto the RDAP unit and take showers due to no hot water on the GP side; about GP inmates being allowed by administration to come onto the RDAP unit to see their counselor; and about GP inmates going through the RDAP side to get to work on the upper level quarantine unit.

64. All these continuing occurrences violate policy, although Dr. Wartenberg told Carrera that she would correct the policy violations, but they continue, even as Mr. Carrera continues to report the violations of policy to Dr. Wartenberg.

65. On August 8, 2021, Dr. Wartenberg retaliated against Carrera by providing him a poor evaluation regarding entering a note by the deadline of August 2, 2021, when Mr. Carrera was not at the institution on that day because he was on sick leave, which Dr. Wartenberg knew.

66. On September 8, 2021, Carrera was placed under investigation, he was removed from his duties as a Drug Treatment Specialist, and he was re-assigned to be a phone monitor in a very small room, where he works alone.

67. Mr. Carrera contends that all of these actions taken against him are retaliation.

68. Dr. Kuehner also ordered Carrera to not have any communication with other drug treatment specialists, which Mr. Carrera contends is further retaliation.

69. At FCI Bastrop, there is another entire room with at least six other BOP employees who are under investigation and who have been re-assigned from their regular duties to be phone monitors.

70. Mr. Carrera contends these other phone monitors were all referred for investigation after they

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 9**
DIXONORIGINALCOMPLAINT.wpd

filed an EEO complaint or a whistleblower complaint.

71. On September 22, 2021, Dr. Wartenberg changed Carrera's schedule after he returned to work from leave, so that his scheduled was made from 7:30 am until 4:00 pm, and his previously compressed work schedule was taken away, which he contends was further retaliation.

72. On September 26, 2021, a Sunday, Carrera texted Dr. Wartenberg to tell her he would use 8 hours of a time off award that he had received on Monday, September 27, 2021.

73. Although Dr. Wartenberg authorized the time off, she also requested proof of a doctor's appointment, which appointment verification is not required to use a time off award, so Carrera contends this request for verification was more retaliation.

74. On October 12, 2021, Carrera sent Dr. Wartenberg an email reminding her that he would use a time off award on October 13 and October 14, as his daughter was visiting.

75. Dr. Wartenberg soon responded, stating that she would not allow Carrera to use his time off award or annual leave, which made it necessary for Carrera to email Defendant Rosalez directly to obtain relief from this continued retaliation.

76. Warden Rosalez admitted to the union president that Dr. Wartenberg was wrong to deny Mr. Carrera his time off and he said he would get the situation corrected.

77. A short time later, Carrera was notified by Wartenberg that his time off award was granted.

78. Dr. Wartenberg then came to my phone monitor work area and delivered a "questionable sick leave" letter that included no specifics as to any issues she had questioning sick leave taken.

79. The "questionable sick leave" letter is more retaliation, as Dr. Wartenberg was visibly upset over the warden granting my time off award leave.

80. Dr. Wartenberg was short and abrupt in her comments, she failed to give any explanation for

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 10**

DIXONORIGINALCOMPLAINT.wpd

the "questionable sick leave" letter, and her face was visibly reddened.

81.     Since these incidents, Carrera has remained under investigation for months, no explanation has been provided as to the reason for the investigation and he has been subjected to a continuing hostile work environment.

82.     As Mr. Carrera's experience shows the BOP EEO process is a non-functioning administrative remedy that denies "prompt remedial action" and "interim relief", and as there seems to be no likelihood of prompt resolution, he seeks immediate relief in federal court.

## Title VII Claims

83.     Emily Dixon, Psy. D. and Ricardo Carrera allege they were subjected to and continue to be subjected to illegal discrimination and harassment in their employment at BOP, which discrimination and harassment the Defendants refuse to remedy, and they allege the discrimination and harassment violates 42 U.S.C. § 2000e *et seq*.

84.     Plaintiffs re-allege and incorporate by reference all of the factual allegations set out in paragraphs through 83 above and they further show based upon these alleged facts that they:

   a.     are each a member of a protected class;

   b.     they each suffered illegal discrimination because of their respective gender; and

   c.     they suffered damages as a result of the illegal discrimination.

85.     Plaintiffs also show they:

   a.     are each a member of a protected class;

   b.     they each were subjected to illegal retaliation because they made their respective complaints of gender discrimination; and

   c.     they suffered damages as a result of the illegal retaliation.

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 11**

DIXONORIGINALCOMPLAINT.wpd

86. Plaintiffs allege the conduct of these Defendants violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*.

## Declaratory, Injunctive and Equitable Relief

87. Federal district courts have "***the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.***"[1]

88. This duty to fashion injunctive relief in Title VII cases was recognized by Fifth Circuit in *EEOC v. Rogers Bros., Inc.*, where the court said:

> **[I]njunctive relief is mandatory unless the District Court finds on the basis of clear and convincing proof that there exists no reasonable probability of further noncompliance. The burden of negating that probability lies with the defendants, and in these circumstances it will be a monumental one.**[2]

In *James v. Stockham Valves & Fittings Co.*, the Fifth Circuit also said:

> **the district court is directed to reassess the evidence relative to injunctive relief. Unless it can discern and identify clear and convincing evidence that there is no reasonable probability of further noncompliance, the district court should enter a broad injunction against the [illegal discrimination].**[3]

Finally, in *EEOC v. Service Temps, Inc.*, the Fifth Circuit emphasized these two decisions continue to serve as "Fifth Circuit precedents".[4]

### *Non-Functioning EEO Process*

89. These Plaintiffs' efforts to use the BOP's EEO process has been a years-long, complicated

---

[1] *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). (emphasis added) (citing *Louisiana v. United States*, 380 U.S. 145, 154 (1965)).

[2] 470 F.2d 965, 966 67 (5th Cir.1972) (per curiam).

[3] 559 F.2d 310, 354 (5th Cir. 1977).

[4] 679 F.3d 323, 338 (5th Cir.2012).

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 12**

DIXONORIGINALCOMPLAINT.wpd

bureaucratic process that provided no remedy from discrimination, which "non-functioning process" should itself be corrected by the Court.

90. With their individual discrimination complaints, Plaintiffs also ask the Court to remedy the "non-functioning" EEO process at BOP specifically and at the Department of Justice generally.

### *Plaintiffs' Claims for Declaratory, Injunctive and Equitable Relief*

91. Plaintiff Dixon and Plaintiff Carrera contend this Court has authority to order declaratory, injunctive, and equitable relief, pursuant to 28 U.S.C. § 2201 and its inherent equitable powers, including the authority to determine the Plaintiffs' rights to remedial action by Defendants.

92. Plaintiffs show the Court has authority to require Defendants to take necessary steps to remedy past discrimination and harassment and to order remedial steps by Defendants that are reasonably calculated to prevent future harassment, consistent with 29 C.F.R. § 1614.501 (a)(2).

93. As Defendants Tellez, Smith, and Rosalez are individual likely to be affected by Plaintiffs' requests for declaratory, injunctive, and equitable relief, and as these individual Defendants have affirmative duties to stop the illegal discrimination and harassment the Plaintiffs have been subjected to, Plaintiffs show these individual Defendants are proper parties to this action that may necessarily determine legal rights and remedies that affect these individual Defendants.

### Damages

94. Defendants actions and inactions caused each of the Plaintiffs to suffer damages, including past lost economic damages, as well as past and future mental anguish and emotional distress, for which damages each of the Plaintiffs seeks monetary relief in this lawsuit.

### Pre-Judgment and Post Judgment Interest

95. Plaintiffs seek pre-judgment and post judgment interest as allowed by applicable law.

**PLAINTIFFS' ORIGINAL COMPLAINT – Page 13**

DIXONORIGINALCOMPLAINT.wpd

**Attorney's Fees**

96. Plaintiffs seek attorney's fees as permitted by law.

**Jury Request**

97. Plaintiffs requests a jury trial.

WHEREFORE, Plaintiff Emily Dixon, Psy.D and Plaintiff Ricardo Carrera pray that Defendant Merrick Garland, Defendant Heriberto Tellez, Defendant Michael Smith, and Defendant Gerardo Rosalez be cited to appear and answer herein, and on final jury trial, Plaintiffs have judgment against Defendants for their damages, costs of suit, prejudgment and post-judgment interest permitted by law, as well as the declaratory, injunctive and equitable relief requested, and for all other relief to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

LAW OFFICES OF WILLIAM J. DUNLEAVY

s/ *William J. Dunleavy*
William J. Dunleavy
State Bar No. 00787404
2435 North Central Expressway
12th Floor
Richardson, Texas 75080
Telephone No. 972/247-9200
Telecopier No. 972/247-9201
Email: bill@williamjdunleavy.com

ATTORNEY FOR PLAINTIFFS