UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**EMILY DIXON,**

 Plaintiff,

v.           No. 4:23-cv-00019-P

**MERRICK GARLAND,**

 Defendant.

### MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff Emily Dixon's Motion for Partial Summary Judgment (ECF No. 88) and Defendant Merrick Garland's (the Federal Bureau of Prisons "BOP") (as Attorney General, Merrick Garland oversees and is the most executive member of the Bureau of Prisons) Motion for Summary Judgment (ECF No. 76). In her Response to the BOP's Motion for Summary Judgment, Dixon also filed a Rule 56(d) Motion for Continuance.[1] ECF No. 96. For the following reasons, the Court will **GRANT** the BOP's Motion for Summary Judgment (ECF No. 76), **DENY** Dixon's Motion for Continuance (ECF No. 96), and **DENY** Dixon's Motion for Partial Summary Judgment (ECF No. 88) as moot.

---

[1] Dixon "filed" this "motion" for a continuance in the body of her Response to the BOP's Motion for Summary judgment. *See* ECF No. 96. Dixon did not conference with the BOP (a violation of this Court's Local Rule 7.1(h)) and did not file this "motion" as a standalone motion, but rather shoehorned it into her response brief. The Court is perplexed at how Dixon can claim she needs a continuance for more discovery while having also submitted a Motion for Partial Summary Judgment. If Dr. Dixon feels she has enough evidence to warrant summary judgment on her claims, how can she turn around and claim that summary judgment should be stayed against the BOP so she can conduct more discovery? Dr. Dixon has not adequately shown why she needs additional discovery and why said additional discovery will create a genuine issue of material fact. For these reasons, the Court denies Plaintiff's Motion.

## BACKGROUND

Emily Dixon, Psy.D. worked for the Federal Bureau of Prisons ("BOP") at Federal Medical Center – Carswell ("FMC Carswell") from 2015 until September 2023. FMC Carswell is an all-female administrative security federal medical center and serves as the only medical and psychiatric referral center for females in the BOP system. FMC Carswell provides a range of services, including evaluation and treatment of inmates with mild-to-severe mental disorders.

Dr. Dixon began working at FMC Carswell as an intern in the psychology department in 2015 where she was supervised by Chief Psychologist, Dr. Daniel Kim. Upon completion of her internship, Dr. Dixon was hired as a staff psychologist in October 2016. From Staff Psychologist, Dr. Dixon was then promoted to Clinical Psychologist. From Clinical Psychologist, Dr. Dixon was promoted to the Dual Diagnosis Residential Drug Abuse Program as a coordinator and then finally to the Sex Offender Management Program, also as a coordinator. She held this position from September 2020 until she resigned from the BOP in September 2023. Outside of her position at FMC Carswell, Dr. Dixon began working as a private psychologist in her off-duty time upon receipt of her psychology license in March 2021.

In 2019, Dr. Dixon injured her right shoulder while opening a door for which she underwent surgery roughly six months after. In early 2020, while recovering, Dr. Dixon was cleared to return to limited-duty work. The restrictions accompanying her return limited her to one hour of walking per day, one hour of keyboarding per day, twelve minutes of bending/stooping per day, and thirty minutes of simple grasping per day, among others. Of note, Dixon's Duty Status Report included a note from her doctor stating Dr. Dixon "should not work around inmates. Should not fire a firearm. Should not respond to body alarms. Should not respond to physical altercations." In response to this Duty Status Report, the BOP convened a committee in February 2020 to find an appropriate assignment for Dr. Dixon that would accommodate her

restrictions. Members of this committee included representatives from Safety, Medical, Human Resources, Dr. Dixon's supervisor, and an Associate Warden of FMC Carswell. The committee ultimately decided to assign her to the night shift in the control room. Dr. Dixon, with some apprehension, accepted this assignment.

In July 2020, Dr. Dixon received a note from her doctor clearing her to return to her pre-injury duties. Dr. Dixon arrived to work a shift as normal prior to her injury but was sent home until the committee could review her doctor's note and formally clear her to resume duty. Later in July, Dr. Dixon returned to her normal duties with no restrictions. She resigned from the BOP in September 2023.

## PROCEDURAL HISTORY

Dixon filed an internal EEO complaint in 2019 and a whistleblower complaint with the Merit System Protection Board ("MSPB") in 2020. *See* ECF No. 18. Her MSPB case was settled in 2021. *Id.* Dr. Dixon filed another complaint through the internal EEO process in 2022. *Id.* Along with Ricardo Carrera, a Drug Treatment Specialist serving at Federal Correctional Institution – Bastrop, Dr. Dixon sued the BOP in the Dallas Division of this Court in August 2022. *See* ECF No. 1. In January 2023, Judge Fitzwater severed Dixon's and Carrera's claims, sending Carrera's claims to Austin and Dixon's claims here. *See* ECF No. 15.

Dr. Dixon amended her Complaint later that month. ECF No. 18. In her Amended Complaint, Dr. Dixon alleges gender discrimination and two theories of retaliation under Title VII of the Civil Rights Act of 1964. *See id.* Dr. Dixon also sought declaratory relief to remedy the "non-functioning" EEO process at the BOP and to require the BOP to take necessary steps to remedy past discrimination and harassment. *See id.*

The Parties filed cross-motions for summary judgment last fall. For the reasons below, the Court **GRANTS** the BOP's Motion for Summary Judgment (ECF No. 76) and **DENIES** Dixon's Motion for Continuance and Motion for Partial Summary Judgment. ECF Nos. 88, 96.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. Fed. R. Civ. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

The BOP seeks summary judgment on each of Dixon's claims: (1) Title VII gender discrimination; (2) Title VII retaliation for complaining of discrimination; and (3) Title VII retaliation for helping other employees do the same. The Court addresses each in turn.

### A. Title VII Gender Discrimination

Title VII prohibits workplace discrimination based on gender. *See* 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie discrimination claim under Title VII, Dixon must show "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but

4

*outside* the protected class were treated more favorably." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (emphasis added) (applying *McDonnell Douglas* framework), *abrogated on other grounds by Hamilton v. Dall. Cnty.*, 79 F.4th 494 (5th Cir. 2023). If a plaintiff makes a prima facie claim, the burden then shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action" *Alkhawaldeh v. Dow Chem. Co.,* 851 F.3d 422, 426 (5th Cir. 2017). The Court analyzes each of these factors.

1. Dixon is a Member of a Protected Class.

Dr. Dixon, as a woman, is a member of a protected class. *See* 42 U.S.C.A. § 2000e-2. The BOP does not dispute this point. *See generally* ECF Nos. 77; 101.

2. Dixon was qualified for the position she sought.

Similar to the first factor, there is no debate here. No part of Dixon's argument is centered on whether she was told she was unqualified for a promotion or new position based on her qualifications, as she received consistent promotions throughout her time at FMC Carswell. ECF No. 78-1 at 16–22.

3. Dixon did not suffer an adverse employment action.

This is where Dixon's prima facie case runs into trouble. The standard for what qualifies as an adverse employment action has been heavily contested at the Fifth Circuit. The Fifth Circuit in *Hamilton v. Dall. Cnty.* explained that a plaintiff plausibly alleges Title VII discrimination by showing discrimination in hiring, firing, compensation, or the "terms, conditions, or privileges" of her employment. *Hamilton,* 79 F.4th at 502–03 (citing 42 U.S.C. § 2000e-2(a)(1)). A plaintiff need not show an "ultimate employment decision." *Id. Hamilton* left "for another day the precise level of minimum workplace harm a plaintiff must allege on top of showing discrimination in one's terms, conditions, or privileges of employment." *Id.* at 505 (internal quotations omitted). But *Hamilton* made clear that "Title VII [] does not permit liability for de minimis workplace trifles." *Id.* at 505.

5

*Hamilton* involved a sex-discrimination claim brought by female detention service officers against the Dallas County Sheriff's Department. *See id.* at 497. The department gave its detention service officers two days off each week, and used a sex-based policy to determine which two days an officer could pick. *See id.* Only men could select full weekends off—women could not. *See id.* The Complaint alleged that this sex-based system discriminated against the officers in the "terms, conditions, or privileges of employment." *Id.* at 504. The department argued that the plaintiffs had not suffered an actionable "adverse employment action" for purposes of a Title VII claim. *See id.* The department argued that to prove an adverse employment action, a plaintiff should be required to show—in addition to discrimination with respect to the "terms, conditions, or privileges of employment"—a "*materially adverse* employment action," a "*tangible* employment action," or an "*objective material* harm." *Id.* (emphasis added). Ultimately, the Fifth Circuit held that "whatever standard we might apply," whether it be a "*de minimis*" standard or a "materiality" standard, "it is eminently clear that the Officers' allegations would satisfy it at the pleading stage." *Id.* at 505. As the Fifth Circuit noted: "It's that simple. At the *pleading* stage, these allegations are sufficient to state a claim under Title VII." *Id.* (emphasis added). Thus, the Fifth Circuit left district courts with little guidance as to the minimum workplace harm a plaintiff must show to state a prima facie claim at the summary judgment phase.

The Fifth Circuit clarified the *Hamilton* standard in *Harrison v. Brookhaven Sch. Dist.*, explaining that:

> Title VII does not permit liability for *de minimis* workplace trifles. Thus, Harrison must allege not only an adverse action, but something more than a *de minimis* harm borne of that action. This is often referred to as the "materiality" half of the analysis . . . . To "discriminate" reasonably sweeps in some form of an adversity and a materiality threshold. It prevents the undefined word "discrimination" from commanding judges to supervise the minutiae of personnel management. It ensures that a discrimination claim involves a meaningful difference in the terms of employment and one that injures the affected employee . . . . But we take these innovations to be shorthand for the

6

> operative words in the statute and otherwise to incorporate a *de minimis* exception to Title VII. *But de minimis means de minimis*, and shorthand characterizations of laws should not stray.

82 F.4th 427, 431–32 (5th Cir. 2023) (cleaned up). In other words, the "*de minimis*" and "materiality" standards are one and the same. Materiality is a shorthand characterization of the well-established *de minimis* standard, which "has roots that stretch to ancient soil." *Id.* at 423. And thus, courts must give the *de minimis* standard its familiar meaning—"*de minimis non curat lex* (the law does not take account of trifles)." *Id.* Accordingly, a plaintiff alleges an adverse employment action if she alleges more than *de minimis* discrimination in the terms, conditions, or privileges of employment.

*Harrison* paints a clear picture of the *de minimis* standard in action. In *Harrison*, plaintiff LaRenda Harrison, a black female educator and school administrator, sued her school district for promising and then refusing to pay for her to attend a training program for prospective superintendents. *Id.* at 428. The only element of her claim at issue was whether she suffered an adverse employment action. *Id.* at 429. The court held that Harrison "alleges more than a *de minimis* injury inflicted on her by the School District's adverse action: the personal expenditure of approximately $2,000." *Id.* at 432. The court explained that this "is not a *de minimis* out-of-pocket injury, particularly when that expense was originally promised to be paid by someone else." *Id.* Thus, the court concluded that "Harrison's injury clears the *de minimis* threshold." *Id.*

Applying this standard here, Dr. Dixon does not show she suffered more than a *de minimis* adverse employment action. Her briefing identifies six alleged adverse employment actions—the Court addresses each in turn.

*First*, Dr. Dixon claims the limited-light-duty assignment she was placed on upon return from her surgery was an adverse employment action. *See* ECF No. 78-1 at 37–38. The Court struggles to see how, even construing the facts most favorably to Dixon, this temporary duty qualifies as an adverse employment action. As explained above, the "terms, conditions, or privileges of employment" must be materially affected to qualify as an adverse employment action. This temporary

change to Dr. Dixon's schedule was an *accommodation* provided to her by the BOP to make it possible for her to continue working while she recovered from surgery. *See* ECF No. 78-1 at 105–106. Given the restriction that Dixon "should not work around inmates," the Court understands if it was difficult to accommodate Dixon at a facility full of inmates. *See* ECF No. 78-1 at 95.

Further, Dixon's temporary assignment only lasted a few months. *See* ECF No. 78-1 at 101. While Dixon may have preferred an alternative accommodation, her displeasure isn't enough to deem the accommodation unreasonable or declare it an adverse employment action. *See* ECF No. 78-1 at 107, *see also Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011) (government defendant engaged in good-faith interactive process in attempts to find reasonable accommodation for plaintiff, even though plaintiff did not like the accommodation). The BOP gathered a committee to determine what type of accommodation to give Dr. Dixon. *See* ECF No. 78-1 at 98. The committee included Dixon's supervisor, the Associate Warden, and persons from Safety, Medical, and Human Resources. *Id.* If courts began ruling that temporary accommodations in response to doctor-ordered limitations are "adverse employment actions," courts would be flooded with persons crying "adverse employment action" anytime an accommodation is not what they had in mind. The very nature of an accommodation is to modify the nature of one's job because, in the present scenario, the job cannot be done as it was prior. Accommodations are not adverse; they are *for the employee's benefit*. This Court is loath to turn itself into a de facto human resources manager. For these reasons, Dixon's limited-light-duty assignment fails the *de minimis* standard and is not an adverse employment action.

*Second*, Dr. Dixon points to the time she was sent home from work when attempting to return from her limited-light-duty. *See* ECF No. 78-1 at 31–35. The Court once again struggles to see how this was an adverse employment action. Dixon tried to return to her normal working hours after cleared by her doctor to do so. Be that as it may, her doctor's clearance had not yet been reviewed by the committee that placed Dixon on limited-light-duty in the first place. *See* ECF No. 78-1 at 110. It is

reasonable for the BOP to first review the notes from Dixon's doctor, especially considering the nature of restrictions required by her doctor when she was on limited-light-duty. *See* ECF No. 78-1 at 95. Moreover, Dr. Dixon returned to her normal position with no material changes very shortly afterward. *See* ECF No. 78-1 at 102. That her return to normal work was slightly delayed so the BOP could make an informed decision and ensure her safety does not render the BOP's decision an adverse employment action. Accordingly, the Court finds this fails the *de minimis* standard.

*Third,* Dixon's response briefing points to a series of actions by Dr. Kim that Dixon says amount to adverse employment actions. Those include: (1) Dr. Kim playing favorites; (2) Dr. Kim giving Dr. Dixon less than "outstanding" performance reviews; and (3) Dr. Kim not certifying Dr. Dixon's hours worked. *See* ECF No. 96 at 36, 23–24, 45.

None of these amount to more than a *de minimis* workplace trifle. Playing favorites, as outlined by the Fifth Circuit, affects both genders and does not represent a Title VII violation. *See Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 382 (5th Cir. 2003) (favoritism, while unfair, disadvantages both sexes alike for reasons other than their gender).

Dr. Dixon also says receiving "excellent" performance reviews—as opposed to "outstanding"—was an adverse employment action. As Dixon sees things, her "excellent" reviews materially impacted her ability to receive raises. *See* ECF No. 96 at 22–24. Putting aside the fact that "outstanding" reviews do not guarantee a raise, the Court refuses to act as the BOP's super-personnel department and it will not scrutinize the specifics of standard performance reviews. *Johnson v. McDonald*, 623 F. App'x 701, 704 (5th Cir. 2015) (performance pay is not automatic upon achieving a specific review rating). In any event, Dixon's argument that an "excellent" performance review was somehow "adverse" is uniquely absurd in a way not warranting further attention from the Court.

Dixon next claims an adverse employment action arose when Dr. Kim declined to certify certain hours Dixon allegedly worked. *See* ECF No. 96 at 33. Once again, the Court does not see how this surpasses the *de minimis* standard, as Dr. Kim's lack of action only minimally delayed

Dixon's licensure and had no other impact on Dixon's job. *See* ECF No. 78-1 at 126. This is especially true as any delay or lack of certification did not affect the terms or conditions of Dr. Dixon's employment with the BOP. Further, once she received her license, it had absolutely no impact on any past or future professional endeavors. This is the very definition of *de minimis.*

*Fourth*, Dr. Dixon claims she was "ostracized" in the workplace. ECF No. 96 at 31. It is well-settled that ostracization is the type of petty slight and *de minimis* conduct that does not amount to an adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In *White*, the Supreme Court explained that Title VII "does not set forth a general civility code for the American workplace." *Id.* (internal citations omitted). Further, the Court specified that petty slights, minor annoyances, and snubbing by supervisors or co-workers are not actionable under Title VII. *See id.* The type of "ostracization" felt by Dr. Dixon at FMC Carswell falls into that category, rendering it unactionable under Title VII. *See id.*

*Fifth*, Dr. Dixon claims that Dr. Galvan filed a frivolous professional license complaint against her. ECF No. 96 at 38. Dr. Galvan was a comparator and coworker of Dr. Dixon. *Id.* at 20. However, as a coworker, Dr. Galvan and her conduct cannot rise to the level of an adverse employment action. The Fifth Circuit has explained only actions by the final decisionmaker count as potential adverse employment actions. *See Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 657–658 (5th Cir. 2012) (Fifth Circuit declines to look at claim concerning harassment by coworkers under Title VII because actions of ordinary employees are not imputable to their employer). The Court similarly declines to do so here. Dr. Galvan's actions are not imputable to the BOP as she is a coworker of Dr. Dixon, and her actions were not in furtherance of the BOP's objectives or business.

*Sixth,* Dr. Dixon claims a memo which restricted her from entering the confines of FMC Carswell was posted after she resigned. *See* ECF No. 96 at 35–37. Here, the Court need not go into much detail as to why this is not an adverse employment action because Dr. Dixon explains it herself. This memo was posted *after* she resigned (self-imposed

10

employment action) and prevented her from reentering the secure facility where she was no longer employed. There is no employment action at all because Dr. Dixon voluntarily ended her employment—anything FMC Carswell did after that, by definition, is not an adverse employment action.

For the reasons above, none of Dixon's six categories of alleged adverse employment actions rises above the *de minimis* standard articulated in *Harrison*. Accordingly, Dr. Dixon fails to establish her prima facie case.

   4. *Dr. Dixon does not point to any similarly situated male employee who was treated differently.*

Even if Dixon could satisfy the third prong of her prima facie case, she would still fail the fourth: showing others similarly situated but outside her protected class were treated more favorably.

Dr. Dixon must show that a similarly situated person outside her protected class was treated more favorably. *Alvarado*, 492 F.3d at 611. The Fifth Circuit has clarified that the circumstances at issue must be "nearly identical" to those of the plaintiff. *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995). This means that the employees in question "held the same job or responsibilities" and "shared the same supervisor or had their employment status determined by the same person." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Here, Dr. Dixon does not make this showing. In fact, she only compares herself to one male employee—a Dr. Jwody that Dr. Dixon references in her deposition and then proceeds to never mention again in her summary judgment briefing. *See* ECF Nos. 78-1 at 39–40; 88; 105. But even if what Dixon alleges about Dr. Jwody is true, she openly admits that he was a medical doctor and was subject to a completely separate hierarchy and chain of command—including separate supervisors and job responsibilities. *See id.* at 39–40. Since Dr. Jwody does not hold the same job or responsibilities and does not share the same supervisor or employment status as Dr. Dixon, he is not a similarly situated comparator. This, on top of the fact that Dixon mentions neither

11

Jwody nor any other similarly situated male employee in her briefing, defeats the fourth prong of Dixon's prima facie claim.

Further, Dixon's briefing references several other BOP psychologists who were allegedly treated more favorably. *See* ECF No. 96 at 22–24. The problem? These other psychologists are also women. Dr. Dixon references Dr. Blackwood and Dr. Wenzel and how they got quality step increases (raises) while she did not. *Id.* She also says that they were part of Dr. Kim's "A Team." *Id.* Regardless, that others within one's protected class were treated better does not support a discrimination claim predicated on that protected class. Accordingly, Dr. Dixon does not show there were similarly situated persons outside her protected class who were treated better than she was, thus failing the fourth prong of her prima facie case. Because Dr. Dixon does not satisfy the third and fourth prongs of her prima facie claim, the Court **GRANTS** the BOP's Motion for Summary Judgment for her gender-discrimination claim.

### B. Title VII Retaliation Claims

Dr. Dixon's second and third claims are for retaliation under Title VII. To state a prima facia Title VII retaliation claim, a plaintiff must show that: "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017). Here too, the Court applies *McDonnell-Douglas* burden-shifting. *See Parker v. La. Dept. of Educ. Special Sch. Dist.*, 323 F. App'x 321, 327 (5th Cir. 2009).

The Court need not wade into this analysis here because Dr. Dixon does not present evidence to withstand the BOP's motion for summary judgment on these claims. *See generally* ECF Nos. 96, 105. As the BOP correctly points out, the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Further, the Court need not "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

12

Lastly, a plaintiff cannot abandon an issue in opposition to summary judgment and then resurrect it by pointing to the pleadings. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983).

Here, Dr. Dixon has assembled a kitchen-sink approach to her claims—throwing a hodgepodge of allegations at the wall and seeing what sticks to hint at retaliation. Dr. Dixon has her "factual allegations" section carry the load for supporting her claims without providing case law or substantive responses to the BOP's arguments. She does not analyze or even attempt to connect any of her facts to the elements of a retaliation claim. For example, before the summary section in her Response, Dr. Dixon lays out the factual pattern concerning the alleged memo that was sent out when she resigned. *See* ECF No. 96 at 35–37. The section is five paragraphs long and is simply a factual recount of what occurred, with no ties to any case law or any claims. *Id.* Only in the last sentence of the last paragraph does Dr. Dixon say "this was retaliation" without further explaining how or why these alleged actions qualify as retaliation under any legal framework. *Id.*

The apparent abandonment of her retaliation claims is even further evident at the end of the brief in her "argument and authorities" section. In this section of her Response, Dr. Dixon takes the time to lay out the prima facie standard for gender discrimination as well as hostile work environment. *Id.* at 38–40. But nothing concerning retaliation. The Court thus treats this as an abandonment of these claims since Dr. Dixon did not defend against them in her Response to the BOP's Motion. *See supra*; *see also* ECF No. 96. Accordingly, even looking at the evidence of record in the light most favorable to Dr. Dixon, she has not provided any specific evidence or articulated how she faced retaliation. This will not defeat the BOP's Motion. As a result, the Court must **GRANT** the BOP's Motion for Summary Judgment on Dixon's retaliation claims.[2]

---

[2]Even applying the three-step test for Title VII retaliation, Dr. Dixon's claims fall short. While there is no debate that she took a protected action, even under the different framework for retaliation, Dr. Dixon did not demonstrate that she faced an adverse employment action. Given she did not face an adverse employment action, she cannot show a causal connection to adverse employment actions that never occurred. Of the three steps, she fails two.

13

### C. Hostile Work Environment Quasi-Claim

Though Dixon's briefing discusses the standards for a Title VII hostile-work-environment claim, *see* ECF No. 96 at 39, she does not assert such a claim in the operative pleading—the Amended Complaint. *See* ECF No. 18. Accordingly, despite overwhelming evidence such a complaint would nevertheless fail, the Court declines to analyze a claim for relief not included in Dixon's Amended Complaint.

### CONCLUSION

The BOP moved for summary judgment on Plaintiff Emily Dixon's Title VII gender discrimination and retaliation claims. ECF No. 76. For the reasons above, the Court **GRANTS** the BOP's Motion and **ENTERS summary judgment** in the BOP's favor on all claims asserted in this action. Having done so, the Court **DENIES** Plaintiff's Motion for a Continuance (ECF No. 96) and **DENIES** Plaintiff's Motion for Partial Summary Judgment as moot. ECF No. 88.

**SO ORDERED** on this **12th day of January 2024.**

*[Signature: Mark T. Pittman]*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE